IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

MICHAEL GIVENS,

        Plaintiff,

vs.

EQUIFAX INFORMATION SERVICES,
LLC; and EXPERIAN INFORMATION
SOLUTIONS, INC.,

        Defendants.

3:23-cv-113-HTW-LGI

## COMPLAINT

### INTRODUCTION

1.     This is an action for damages brought by an individual consumer, Michael Givens, against Equifax Information Services, LLC ("Equifax"); and Experian Information Solutions, Inc. ("Experian"), for violations of the Fair Credit Reporting Act, 15 U.S.C. §1681 *et seq.* (FCRA).

### JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction under 28 U.S.C. §§1331 (general federal question) and 1337 (interstate commerce) and 15 U.S.C. §1681p (FCRA).

3.     Venue in this District is proper because each Defendant is subject to jurisdiction here.

### PARTIES

4.     Plaintiff Michael Givens is an adult individual residing in Magee, Simpson County, Mississippi.

5.     Defendant Experian is a credit reporting agency organized as an Ohio corporation

1

with its principal place of business located at 475 Anton Boulevard, Costa Mesa, CA 92626. It does business in Mississippi. Its registered agent and office are CT Corporation System, 645 Lakeland East Dr., Ste. 101, Flowood, MS 39232. It is a national credit reporting agency the activities of which are subject to the terms of the FCRA.

6. Defendant Equifax is a credit reporting agency organized as a Georgia limited liability company with its principal office located at 1550 Peachtree Street NW, H46, Atlanta, GA 30309. It does business in Mississippi. Its registered agent and office are Corporation Service Company, 109 Executive Drive, Suite 3, Madison, MS 39110. It is a national credit reporting agency the activities of which are subject to the terms of the FCRA.

## FACTS

7. Plaintiff has a brother, Mitchell, who lives at a different address in Jayess, Mississippi.

8. Plaintiff and his brother had the same historical address.

9. Plaintiff's brother filed bankruptcy in June 2022, case 22-50676-kms (S.D.Miss.).

10. Plaintiff's brother also has defaulted debts, which resulted in the bankruptcy filing.

11. Defendants have been commingling the credit files of Plaintiff and his brother, and reporting the brother's bankruptcy filing and defaulted debts on Plaintiff's credit report.

12. Plaintiff learned of the problem when he was unable to refinance his mortgage loan with Regions Bank. Regions Bank notified Plaintiff on August 2, 2022 of the denial of credit, stating that it was relying on all three credit reports. (Exhibit A) Upon inquiry, Plaintiff was told that the June 2022 bankruptcy filing was the principal reason.

13. On or about August 8, 2022, Plaintiff wrote to the credit bureaus

2

complaining about the commingling of Plaintiff's file and his brother's file. (Exhibit B)

14. After receiving Plaintiff's dispute letter, Defendants responded that the bankruptcy was no longer appearing on Plaintiff's credit reports.

15. Plaintiff also saw that several of the brother's accounts, including Sheffield Financial and Republic Finance, as well as the brother's address information, also appeared on Plaintiff's credit reports.

16. Plaintiff had no delinquent debts with Sheffield Financial and Republic Finance.

17. Plaintiff's brother did have delinquent debts with Sheffield Financial and Republic Finance.

18. By letter of September 28, 2022, Plaintiff, by counsel, wrote to Defendants and Trans Union (Exhibit C), pointing out the commingling of the credit files.

19. Trans Union removed the Sheffield information.

20. Delinquent Sheffield and Republic "tradelines" continue to appear on Plaintiff's Experian report and Equifax report.

21. Defendants have deliberately, willfully, intentionally, recklessly and negligently repeatedly failed to follow procedures that would correct the inaccurate information and permanently unmix Plaintiff's credit files from that of his brother.

22. Plaintiff's credit reports and file have been obtained from Defendants and have been reviewed many times by prospective and existing credit grantors and extenders of credit, including Regions Bank, and the inaccurate information has been a substantial factor in depriving Plaintiff of credit. The inaccurate information has resulted in defamation of Plaintiff.

23. As a result of Defendants' conduct, Plaintiff has suffered actual damages in the form of:

3

    a.  Inability to obtain credit;

    b.  Harm to credit reputation and credit score; and

    c.  Emotional distress in the form of mental pain, anguish, humiliation, embarrassment, anxiety and frustration at potential loss of his home.

24. Plaintiff will continue to suffer the same for an indefinite time in the future, all to Plaintiff's great detriment and loss.

25. Defendants have a serious problem with "mixed files." A mixed file is placing information belonging to one consumer into the file or credit report of a different consumer. In some cases, the two consumers are merged together so there is one file for both consumers.

26. Defendants' procedures for matching consumer information to a consumer file regularly result in the mixing of one consumer with another.

27. Mixed files are not a new phenomenon. Defendants have been aware of mixed files for more than 40 years. *See Thompson v. San Antonio Retail Merchants Ass'n,* 682 F.2d 509 (5th Cir. 1982).

28. Defendants create mixed files despite the fact that every consumer has unique personal identifying information, such as a Social Security number. That is so because Defendants' matching logic allows information to be included in a consumer's file even when the Social Security number reported with the information is not identical to the Social Security number on the consumer's file. Defendants generally treat matching of 7 of 9 digits to be sufficient.

29. Mixed file problems are particularly acute with relatives, such as brothers. This is because they generally lived with one another as minors, so that there are one or more common addresses. Addresses are one aspect of Defendants' matching logic. It is also common for relatives to have similar Social Security numbers, e.g., a parent applies for Social Security numbers for two

4

children at the same time and they are issued consecutive numbers.

30. Defendants are aware that their matching procedures are causing inaccurate credit reports and mixed files.

31. In the 1990's, the Federal Trade Commission ("FTC") filed actions against Equifax and Experian (then known as TRW) because of their failure to comply with the FCRA including the mixing of consumers' files. *F.T.C. v. TRW Inc.*, 784 F. Supp. 361 (N.D. Tex. 1991).

32. In the 1990's, the Attorneys General of a number of states filed a lawsuit against Equifax because of its failure to comply with the FCRA including the mixing of consumers' files.

33. In 1992, Equifax signed an agreement with the State Attorneys General, and agreed to take specific steps to prevent the occurrence of mixed files and to adopt procedures designed specifically to reinvestigate consumer disputes resulting from mixed files.

34. In 1995, Equifax signed a Consent Order with the FTC. To prevent the occurrence of a mixed file, Equifax agreed not to place information in a consumer's file (other than certain public record information) unless it has identified such information by at least two of the following identifiers: (i) the consumer's name; (ii) the consumer's Social Security number, (iii) the consumer's date of birth, (iv) the consumer's account number with a subscriber or a similar identifier unique to the consumer.

35. These actions were well known throughout the credit reporting industry.

36. Defendants nevertheless continue to repeatedly mix consumers' files.

37. In May 2013 Equifax and Experian entered into another settlement with multiple State Attorneys General addressing mixed files.

38. Hundreds of lawsuits have been filed against Defendants by consumers whose files have been mixed. Substantial damages have been awarded in such cases. Courts and juries have

5

found Defendants' mixing of files to be willful. E.g., *Miller v. Equifax Information Services, LLC*, Case. No. 3:11-CV-01231-BR (D.Ore.).

39. Experian states on its website: "A mixed file is when the credit files of two or more people are unintentionally combined in a credit reporting company's database. This can result in errors in name, phone, address and/or credit information. It may happen to people who have common names or similar Social Security Numbers, birth dates, or addresses." (https://www.experian.com/blogs/ask-experian/acr-faqs/acr-inaccuracies-in-reporting/)

40. Similarly, Equifax states on its website: "A mixed credit file occurs when information belonging to more than one person is unintentionally combined in a credit bureau's database. This can result in errors involving names, phone numbers, addresses and credit account information. Those who have common names, similar Social Security numbers, birthdates or addresses may be more at risk." (https://www.equifax.com/personal/help/what-is-a-mixed-credit-file/)

41. Defendants receive billions of dollars in revenue from selling credit reports, resulting in financial pressure to provide reports regardless of accuracy.

## COUNT I – FCRA

42. Plaintiff incorporates paragraphs 1-41.

43. Under 15 U.S.C. §1681e(b), "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

44. Defendants use criteria for matching credit information and individuals that does not require an exact match in terms of name, address, and other criteria.

45. As a result, there is a recurring problem with Defendants commingling the credit files of persons with similar but not identical identifying information, particularly family members

6

who share a common historical address.

46. Defendants failed to employ and follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit reports, information and file in violation of 15 U.S.C. §1681e(b).

47. Defendants violated 15 U.S.C. §1681n and/or §1681o.

48. Section 1681n provides:

§1681n. Civil liability for willful noncompliance

(a) In general. Any person who willfully fails to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of—

(1)

(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $ 100 and not more than $ 1,000; or

(2) such amount of punitive damages as the court may allow; and

(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court. . . .

49. Section 1681o provides:

§1681o. Civil liability for negligent noncompliance

(a) In general. Any person who is negligent in failing to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of—

(1) any actual damages sustained by the consumer as a result of the failure;

(2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

50. As a result, Plaintiff has sustained damages.

7

51. Defendants' violations of the FCRA were willful and therefore Plaintiff is therefore entitled to also seek statutory and punitive damages.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendants for:

i. Actual damages;

ii. Statutory damages;

iii. Punitive damages;

iv. Attorney's fees, costs, and litigation expenses;

v. Such other relief as the Court may deem proper.

## COUNT II – FCRA

52. Plaintiff incorporates paragraphs 1-41.

53. Under the Fair Credit Reporting Act, 15 U.S.C. §1681i, consumer reporting agencies (credit bureaus) such as Defendants are required to conduct a reasonable investigation if a consumer such as Plaintiff disputes the accuracy of an item on his credit report.

54. Section 1681i provides:

§1681i. Procedure in case of disputed accuracy

(a) Reinvestigations of disputed information.

(1) Reinvestigation required.

(A) In general. If the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate free of charge and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer.

(B) Extension of period to reinvestigate. Except as provided in subparagraph (C), the 30-day period described in subparagraph (A) may be extended for not more than 15 additional days if the consumer reporting

8

agency receives information from the consumer during that 30-day period that is relevant to the reinvestigation.

(C) Limitations on extension of period to reinvestigate. Subparagraph (B) shall not apply to any reinvestigation in which, during the 30-day period described in subparagraph (A), the information that is the subject of the reinvestigation is found to be inaccurate or incomplete or the consumer reporting agency determines that the information cannot be verified.

(2) Prompt notice of dispute to furnisher of information.

(A) In general. Before the expiration of the 5-business-day period beginning on the date on which a consumer reporting agency receives notice of a dispute from any consumer in accordance with paragraph (1), the agency shall provide notification of the dispute to any person who provided any item of information in dispute, at the address and in the manner established with the person. The notice shall include all relevant information regarding the dispute that the agency has received from the consumer.

(B) Provision of other information from consumer. The consumer reporting agency shall promptly provide to the person who provided the information in dispute all relevant information regarding the dispute that is received by the agency from the consumer after the period referred to in subparagraph (A) and before the end of the period referred to in paragraph (1)(A). . . .

(4) Consideration of consumer information. In conducting any reinvestigation under paragraph (1) with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A) with respect to such disputed information.

(5) Treatment of inaccurate or unverifiable information.

(A) In general. If, after any reinvestigation under paragraph (1) of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall promptly delete that item of information from the consumer's file or modify that item of information, as appropriate, based on the results of the reinvestigation. . . .

55. Defendants willfully or negligently (a) failed to take reasonable measures to investigate Plaintiff's dispute and (b) failed to correct Plaintiff's credit report.

56. Defendants violated 15 U.S.C. §1681n and/or §1681o.

9

57. Plaintiff incorporates paragraphs 48-49.

58. As a result, Plaintiff has sustained damages.

59. Defendants' violations of the FCRA were willful and therefore Plaintiff is therefore entitled to also seek statutory and punitive damages.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendants for:

    i. Actual damages;

    ii. Statutory damages;

    iii. Punitive damages;

    iv. Attorney's fees, costs, and litigation expenses;

    v. Such other relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues.

s/ Jason Graeber
Jason Graeber

Jason Graeber
250 Beauvoir Road, Suite 4C
Biloxi, MS 39501
(228) 207-7117
jason@jasongraeberlaw.com

admission pro hac vice to be applied for

Daniel A. Edelman
Tara L. Goodwin
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

10

## JURY DEMAND

Plaintiff demands trial by jury.

*s/ Jason Graeber*
Jason Graeber

## NOTICE OF ASSIGNMENT

Please be advised that all rights relating to attorney's fees have been assigned to counsel.

*s/ Jason Graeber*
Jason Graeber

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with Plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If defendant is aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendant.

*s/ Jason Graeber*
Jason Graeber